UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 09-32133-WRS
                                                         Chapter 7
VELINA M. JOHNSON,

    Debtor

VELINA M. JOHNSON,

    Plaintiff                                     Adv. Pro. No. 14-3129-WRS

v.

SALLIE MAE INC., et al,

    Defendants

## MEMORANDUM DECISION

This is an adversary proceeding to determine whether Plaintiff Velina Johnson's student loans were discharged in her bankruptcy pursuant to 11 U.S.C. § 523(a)(8). The Court held a trial on April 25, 2016, at which Plaintiff appeared *pro se* and Robert A. Morgan appeared on behalf of Defendant Kentucky Higher Education Assistance Agency. For the reasons set forth below, the Court finds that Plaintiff's student loan debt is non-dischargeable and, accordingly, will enter judgment for the Defendant.

## I. FACTS & PROCEDURAL HISTORY

Plaintiff Velina Johnson ("Johnson") filed Chapter 7 bankruptcy *pro se* on August 10, 2009, and received a discharge on February 2, 2010. (Case No. 09-32133, Docs. 1 and 33). Johnson filed this adversary proceeding on October 28, 2014, and Defendant Kentucky Higher

Education Assistance Agency ("KHEAA") intervened as the proper defendant on January 20, 2015. (Docs. 1 and 18). After lengthy discovery, the Court held a trial in the case on April 25, 2016.

Johnson incurred the student loan debt at issue[1] through her attendance at Troy University from 2004 through roughly 2006, but did not obtain a degree. As of March 28, 2016, she owes $23,807.04, which consists of $21,703.76 in principal[2] and $2,103.28 in accrued interest. Interest continues to accrue at 7.25%, resulting in a per diem accrual of $4.31. Under a "standard" 10-year repayment plan, Johnson's student loan debt amortizes to a $279 monthly payment. (Doc. 55, Ex. 2).

At the time of trial, Johnson was working part-time at David's Bridal, where she makes $200 to $300 bi-weekly. Her apartment rent was $966 per month and her power bill was $125 per month; Johnson testified that she is living off her tax refund, that she would not be able to pay her rent past May, and that she is behind on her power bill. She previously lived with her uncle rent-free, but is not welcome back there. She has no home phone, cable, or internet, but pays a $225 monthly cell phone bill for herself and her 22-year old son. She is obligated on two car payments: $471 per month for a 2015 Nissan Altima that she drives, and $128 per month for

---

[1] In August 2014 Johnson obtained a second student loan from the United States Department of Education ("USDE") for $5,500 on behalf of her son, who attends Auburn University in Montgomery. (Doc. 25, Ex. A). Johnson named USDE as a defendant in this adversary proceeding, but the Court dismissed USDE as a party because Johnson had incurred this student loan debt post-petition. (Docs. 25 and 30).

[2] Johnson indicated at trial that she believes the principal she owes is approximately $10,000. KHEAA's trial brief indicates that Johnson's original loan amount in 2004 was for $10,625, but that she consolidated her loan in 2006. (Doc. 57). The Court infers that the increase in principal was a result of the loan consolidation.

a 2001 Acura that her son drives. She testified that her son makes the payments on his car. She pays $240 per month for gasoline and $60 per month for automobile maintenance. She also pays $300 per month for food and $75 per month for furniture. She now qualifies for and receives food stamps, and she has no retirement savings. Johnson testified that she has been forced to take three or four payday loans to cover ongoing expenses, and that one of these is still outstanding. The Federal Poverty Income Guidelines indicate that the poverty level for a household of one is $990 per month of income.

Johnson is an intelligent and articulate 52-year old woman who appears to be in good health. She testified she is actively looking for full-time employment, but has no firm offers, and that she is qualified in configuration management, purchasing and buying, and administrative finance. She testified that her last full-time job was with BTAS, a federal contractor with Gunter and Maxwell Air Force Bases, but that she was forced to resign in March 2016 and that she is currently trying to get rehired.[3] Johnson's gross adjusted income since 2009, as reflected on her federal tax returns, is as follows:

|       |          |
|-------|----------|
| 2009: | $36,768  |
| 2010: | $43,295  |
| 2011: | $23,199  |
| 2012: | $10,105  |
| 2013: | $18,379  |
| 2014: | $22,731  |
| 2015: | $40,687  |

(Doc. 57). Johnson testified that she was employed at Sumaria Systems, Inc. from 2007

---

[3] The Court hastens to add that it finds nothing suspicious about the timing of Johnson's resignation from BTAS. Johnson testified honestly and forthrightly, and the Court does not believe she torpedoed her own employment and financial situation to improve her chances of winning at trial.

(according to her Schedule I) until she was laid off in March 2011, and that she was then unemployed until the State of Alabama hired her as an account clerk in April 2013. She lost her job with the State of Alabama in August 2015, but was hired by BTAS a couple of weeks later and worked there until March 2016.

In the twelve years since Johnson incurred her student loan debt, she has made twenty-two payments on it totaling $1,065.76 and has received seventy-two months of deferment. (Doc. 57). KHEAA's representative, Melissa Justice ("Justice"), testified that Johnson would be eligible for a variety of repayment plans other than its "standard" plan, many of which would not require Johnson to make any payments based on her current income, and would forgive the debt after twenty or twenty-five years. *See also* (Doc. 55, Ex. 2). On cross-examination, Justice also testified that interest would continue to accrue on the debt under these repayment plans. Johnson has not entered an alternative repayment plan.

## II. ANALYSIS

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This is a final order.

The Bankruptcy Code excepts from discharge all debt arising from student loans "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). The Bankruptcy Code does not define "undue hardship," but the Eleventh Circuit has adopted the test set out in Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987) to determine undue hardship:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made a good faith effort to repay the loans.

Hemar Ins. Corp. of Am. v. Cox (In re Cox), 338 F.3d 1238, 1241 (11th Cir. 2003) (quoting Brunner, 831 F.2d at 396). The debtor must prove each of these elements by a preponderance of the evidence to discharge her student loan debt. Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley), 494 F.3d 1320, 1324 (11th Cir. 2007).

### A. Minimal Standard of Living

"A 'minimal standard of living' is not such that the debtors must live a life of abject poverty, but it does require 'more than a showing of tight finances.'" McLaney v. Ky. Higher Educ. Assistance Agency (In re McLaney), 375 B.R. 666, 674 (M.D. Ala. 2007) (quoting Pa. Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d 298, 306 (3d Cir. 1995)). It "is a measure of comfort, supported by a level of income, sufficient to pay the costs of specific items recognized by both subjective and objective criteria as basic necessities." Ivory v. U.S. Dep't of Educ. (In re Ivory), 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001). For that reason, courts have consistently rejected rote application of the Federal Poverty Guidelines to determine a minimal standard of living. *See, e.g.*, Wright v. RBS Citizens Bank (In re Wright), 2014 WL 1330276, *4 (Bankr. N.D. Ala. Apr. 2, 2014). Instead, courts make this determination by comparing a debtor's disposable income with the monthly payment necessary to repay the student loans, in light of the specific circumstances of the case. McLaney, 375 B.R. at 674.

Johnson's current financial situation is grim. She earns at most $600 per month from her job at David's Bridal.[4] Moreover, she faces an uncertain living situation since she will soon exhaust her tax refund on rent. Although her car and cell phone payments are high, these expenses are offset by her decision to forego cable and internet. *Cf.* Fields v. Educ. Credit Mgmt. Corp. (In re Fields), 2012 WL 3235844, *5 (Bankr. N.D. Ala. Mar. 23, 2012) (allowing debtor to "trade" his entertainment budget for a more expensive apartment). Even reducing her admittedly excessive gas and car maintenance expenses, and assuming she can find a cheaper apartment, Johnson has a significantly negative budget. Considering that she has no disposable income, the Court has little difficulty concluding that Johnson will be unable to maintain a minimal standard of living if forced to repay her student loan debt.

### B. Additional Circumstances

The debtor must also "show additional circumstances indicating that her state of affairs (that is, the inability to maintain a minimal standard of living if forced to repay the student loans) is 'likely to persist for a portion of the repayment period.'" Wright, 2014 WL 1330276 at *5 (quoting Brunner, 831 F.2d at 396). The Court must consider factors such as "'the debtor's age, age of the debtor's dependants, debtor's education, work and income history, physical and mental health, and other relevant circumstances.'" McLaney, 375 B.R. at 676 (quoting Douglas v. Educ. Credit Mgmt. Corp. (In re Douglas), 366 B.R. 241, 256 (Bankr. M.D. Ga. 2007)). These factors

---

[4] Mechanical application of the Federal Poverty Guidelines is disfavored in a § 523(a)(8) analysis because a "minimal standard of living" is less austere than poverty. That said, when the debtor's income level is below the poverty line, as Johnson's is, through no fault of her own, that fact strongly supports a finding that the debtor's standard of living is "minimal."

must demonstrate "a certainty of hopelessness" that the debtor will be able to repay the loans within the repayment period. Mosley, 494 F.3d at 1326 (internal quotation omitted).

Johnson's situation may be grim now, but there is nothing to suggest it will remain that way. Although Johnson lacks a college degree, she is in good health, is quite articulate, and has qualifications that are desirable in the job market. Her income and employment history since 2009 bear out that she is quite capable of obtaining and holding a steady full-time job that would pay her in excess of $40,000 annually. At age 52 Johnson's projected working years are limited, but repayment of her student loan debt in that period is hardly insurmountable. Also, she has (or will soon have) no dependents to care for.[5]

In short, Johnson presented no evidence demonstrating "a certainty of hopelessness" that she will be able to repay her loans, and the evidence the Court has before it suggests the opposite. Johnson has failed to carry her burden of demonstrating additional circumstances that would indicate her current situation is likely to persist.

### C. Good Faith

The third prong of Brunner requires the debtor to have made "good faith efforts to repay h[er] student loans." Mosley, 494 F.3d at 1327. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses; h[er] default should result, not from h[er] choices, but from factors beyond h[er] control." Id. (citing In re Roberson, 999 F.2d

---

[5] The evidence presented at trial was too inconclusive for the Court to make a determination of whether Johnson's son is her "dependent" within the meaning of § 523(a)(8). *See generally* Rutherford v. William D. Ford Direct Loan Program, 317 B.R. 865, 882-83 (Bankr. N.D. Ala. 2004) (discussing the meaning of "dependent" under § 523(a)(8)). Assuming he is her dependent, Johnson testified he is 22 years old and is a year away from graduating with a degree in information technology from Auburn University in Montgomery, so he presumably will not be a dependent much longer.

-7-

1132, 1136 (7th Cir. 1993)). "'[F]ailure to make a payment, standing alone, does not establish a lack of good faith.'" Id. (quoting Polleys v. Educ. Credit Mgmt. Corp., 356 F.3d 1302, 1311 (10th Cir. 2004)). "[H]owever, courts are generally reluctant to find good faith where a debtor made minimal or no payment on his or her student loans." Wright, 2014 WL 1330276 at *6. Also, a debtor's attempt to negotiate a repayment plan demonstrates good faith, while failure to enroll in an income-contingent repayment plan is not per se bad faith. Mosley, 494 F.3d at 1327.

Johnson's student loans were in deferment for six years and she has paid little more than a thousand dollars on them during the other six years, despite appearing at times to have income that would allow her to pay more. That raises an inference that Johnson has not attempted in good faith to repay the loans. The Court believes Johnson has made every effort to maximize her income and employment prospects, but there is a lack of evidence explaining why she failed to pay more when her financial situation was less dire.

Johnson has refused to enter an income-contingent repayment plan. Johnson's reluctance is understandable because, as she pointed out, interest would continue to accrue and negatively amortize; moreover, the Court is aware that even if the debt were forgiven, it would be treated as taxable income that would likely saddle Johnson with a large non-dischargeable tax debt in her seventies. *See* Rutherford v. William D. Ford Direct Loan Program (In re Rutherford), 317 B.R. 865, 881 (Bankr. N.D. Ala. 2004) (citing Korhonen v. U.S. Dep't of Educ. (In re Korhonen), 296 B.R. 492, 496-97 (Bankr. D. Minn. 2003)). Still, the Court cannot extrapolate evidence of good faith from her refusal that would offset the lack of evidence explaining her failure to make payments.

Even more troublesome to the Court is Johnson's decision to purchase a new car. She testified that her old car (a 2002 Nissan Altima) was having mechanical problems and that she needed to trade it in. The Court accepts this as true. However, Johnson never satisfactorily explained why she was compelled to buy a new car, instead of a low-mileage three-or-four-year old car that would have been reliable and undoubtedly less expensive. This evidence indicates that Johnson has failed to adequately minimize her expenses, which may explain why she failed to pay more on her student loan debt.

Finally, KHEAA makes much of the fact that Johnson took out another student loan in 2014 on behalf of her son as evidence she is acting in bad faith. (Doc. 57); *supra* note 1. The Court does not find this to be significant. Johnson testified that her son had tried to obtain his own loan but was denied, and that there was some confusion about whether she needed to co-sign for him; apparently, she was not expecting that the loan would be made in her name instead of her son's. The Court finds this explanation to be reasonable, and concludes that the 2014 student loan is not indicative of bad faith on the part of Johnson.

That said, Johnson bears the burden of proving she made good faith efforts to repay her student loan. Based on the totality of the evidence the Court has before it, she has failed to carry that burden.

### III. CONCLUSION

A debtor's failure to carry her burden on any one of the three Brunner prongs precludes her from discharging her student loan debt under 11 U.S.C. § 523(a)(8). Johnson has failed to

carry her burden on two of them. Therefore, the Court concludes Johnson's student loan debt is non-dischargeable and will enter JUDGMENT FOR THE DEFENDANT.

Done this 8th day of June, 2016.

*[signature]*

United States Bankruptcy Judge

c: Velina M. Johnson
Robert A. Morgan, Attorney for Defendant KHEAA
Sallie Mae Inc.
Navient Solutions Inc.
Great Lakes Heg Corporation